UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAN STOCKWELL,

                 Petitioner,

      v.

JAMES KEY,

                 Respondent.

CASE NO. 3:13-CV-05435-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: October 23, 2015

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4.

Petitioner Dan Stockwell seeks 28 U.S.C. § 2254 habeas relief from his 2004 conviction by jury verdict of one count of first-degree child molestation and one count of attempted first-degree child molestation. Petitioner is sentenced to life without parole. Dkt. 35, Ex. 6.

Petitioner raises six grounds for relief: (1) violation of the right to an open and public trial based on the sealing of juror questionnaires; (2) violation of the rights to jury trial and due process based on the jury selection process; (3) violation of the rights to a jury trial and due

1  process based on a retroactive application of the elements to RCW 9A.44.070; (4) his 2004

2  conviction is constitutionally invalid and violates the rights to a jury trial and due process and

3  that the Persistent Offender Accountability Act ("POAA") constitutes a bill of attainder and is a

4  violation of guarantee of republican form of government; (5) ineffective assistance of counsel by

5  failing to order transcripts of voir dire, failing to raise issues about voir dire or sealing of jury

6  questionnaires, and failing to properly argue comparability; and (6) his 1986 conviction is

7  constitutionally invalid and violates due process. Dkts. 1, 1-1 at 5-8, 10-11.

8       Respondent concedes that the grounds raised in the petition are exhausted but argues that

9  the decisions made by the state courts were proper. *See* Dkt. 33. Petitioner fails to show that the

10  rulings of the state court violated clearly established federal law. Therefore, the Court

11  recommends that the petition be denied. The Court also recommends denying the issuance of a

12  certificate of appealability.

13                              **BACKGROUND**

14  A.  Facts

15  The Washington Court of Appeals summarized the facts of petitioner's case as follows:

16  In 2004, while babysitting E.M. and M.S., Stockwell touched both girls' vaginas on
    the outside of their clothes. E.M. was seven years old and M.S. was eight years old at
17  the time. E.M. told Cynthia Conrad, a child interviewer, that Stockwell touched her
    vagina through her clothes while the two were alone in his living room watching a
18  movie. M.S. told Conrad that she saw Stockwell touch E.M. and that Stockwell
    touched her in the same way. Conrad took near verbatim notes during the interviews
19  and then transcribed them as soon as possible.

20  The State charged Stockwell with first degree child molestation for the incident with
    E.M. and attempted first degree child molestation for the incident with M.S. A jury
21  convicted Stockwell of both counts. In 1986, Stockwell had pleaded guilty to first
    degree statutory rape. The trial court found the 1986 first degree statutory rape statute
22  comparable to the current first degree child rape statute and sentenced Stockwell to
    life without possibility of parole under the persistent offender statute, RCW
23  9.94A.030(36)(b).

24

1    Dkt. 35, Ex. 51 at 2, *In re Stockwell*, 160 Wn. App. 172, 175-76 (2011) (footnote omitted).

2    B. <u>State Court Procedural History</u>

3        i.    Direct Appeal

4        Petitioner, through counsel, appealed his 2004 conviction and sentence to the Washington

5    Court of Appeals and raised five challenges to his sentence of life without parole under the

6    POAA (RCW 9.94A.030(37) and RCW 9.94A.570). Dkt. 35, Exhibit 7 at 1-2. In his appeal,

7    petitioner argued that (1) his sentence violated his jury trial right under the Sixth Amendment,

8    (2) the POAA as applied to him violated the separation of powers doctrine, (3) the State failed to

9    plead and prove his prior conviction beyond a reasonable doubt which violated due process, (4)

10   the POAA violates the constitutional guarantees of a republican form of government, and (5) the

11   POAA constitutes a bill of attainder. *Id.*

12       Petitioner also filed a pro se statement of additional grounds under Washington Rule of

13   Appellate Procedure (RAP) 10.10 raising six grounds for relief, arguing that (1) the trial court

14   erroneously admitted child hearsay statements, (2) defense counsel provided ineffective

15   assistance at trial by failing to object to the admission of the child hearsay statements, (3) the

16   trial court erred in its rulings about the children's competency, (4) petitioner was denied cross-

17   examination of the State's central witnesses, (5) the trial court erred by failing to give a limiting

18   instruction pertaining to the child hearsay statements, and (6) the prosecutor committed

19   misconduct by vouching for the credibility of a State's witness during closing argument. Dkt. 35,

20   Exhibit 8 at 10-24. The Washington Court of Appeals affirmed petitioner's judgment and

21   sentence. Dkt. 35, Exhibit 11; *State v. Stockwell*, 129 Wn. App. 230, 118 P.3d 395 (2005).

22       Petitioner, through counsel, petitioned for review contending that (1) the Washington

23   Court of Appeals erred by concluding that petitioner's 1986 statutory rape conviction was legally

24

comparable to the crime of rape of a child; (2) the Washington trial court violated petitioner's right to a jury trial right by making a judicial finding that petitioner was not married to the victim of the 1986 offense; (3) the Washington Court of Appeals' failed to address the merits of one of petitioner's pro se claims, which violated his right to appeal; and (4)–(7) the POAA violated separation of powers, the right to a jury trial, the constitutional guarantees of a republican form of government, and constituted a bill of attainder. Dkt. 35, Exhibit 12 at 1-2.

The Washington Supreme Court granted review limited to whether petitioner's prior offense of first-degree statutory rape was legally comparable to the offense of first-degree rape of a child. Dkt. 35, Exhibit 15, *State v. Stockwell*, 159 Wn.2d 394 (2007). The parties submitted additional briefing on that issue. Dkt. 35, Exhibits 13, 14. The Washington Supreme Court affirmed the decision of the Washington Court of Appeals as well as petitioner's sentence. Dkt. 35, Exhibit 15. The Washington Supreme Court issued an 8-1 opinion holding that first-degree statutory rape was legally comparable to first-degree rape of a child and therefore qualified as a "strike" under the two strikes provision of the POAA. Dkt. 35, Exhibit 15 at 7. The Washington State Supreme Court issued its mandate on January 29, 2007. Dkt. 35, Exhibit 16.

ii.     Personal Restraint Petitions

Petitioner, through counsel, filed his first personal restraint petition with the Washington Court of Appeals in December 2007 and challenged his 1986 conviction. Dkt. 35, Exhibit 17. Petitioner claimed that his guilty plea in the 1986 case was involuntary because he had been misinformed about the maximum penalty for the crime. *Id.* at 1-3. The Washington Supreme Court ultimately agreed with the lower court and concluded that petitioner failed to show actual prejudice from the misstated maximum penalty because he received an exceptional sentence below the standard range and his conviction had expired before his personal restraint petition

1    was filed. Dkt. 35, Exhibit 41. Petitioner's motion for reconsideration was denied. Dkt. 35,

2    Exhibits 42-44.

3        Petitioner, through counsel, filed his second personal restraint petition, also in December

4    2007, challenging his 2004 conviction. Dkt. 35, Exhibit 45. In his second petition, he raised four

5    grounds for relief, contending that (1) his 1986 conviction was not comparable to a "most serious

6    offense" under RCW 9.94A.030 and should not have been used to give him a life sentence; (2)

7    the trial court improperly closed part of jury voir dire by sealing the jury questionnaires and erred

8    by using two different standards to decide state and defense challenges for cause; (3) the trial

9    court erred by admitting the prosecutor's investigator's notes as evidence; and (4) appellate

10   counsel provided ineffective assistance of counsel on direct appeal. Dkt. 35, Exhibit 45 at 16-21.

11   The Washington Court of Appeals rejected petitioner's claims and dismissed his second personal

12   restraint petition. Dkt. 35, Exhibit 51, *In re Stockwell,* 160 Wn. App. 172 (2011).

13       Petitioner filed a motion for discretionary review with the Washington Supreme Court

14   raising the same four grounds for relief. Dkt. 35, Exhibit 53. On June 5, 2013, the Washington

15   Supreme Court denied discretionary review without comment. Dkt. 35, Exhibit 57.

16                              **STANDARD OF REVIEW**

17       Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a habeas corpus

18   petition may be granted with respect to any claim adjudicated on the merits in state court only if

19   the state court's decision was contrary to, or involved an unreasonable application of, clearly

20   established federal law, as determined by the Supreme Court, or if the decision was based on an

21   unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

22       Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

23   court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

24

1   or if the state court decides a case differently than the Supreme Court has on a set of materially

2   indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable

3   application" clause, a federal habeas court may grant the writ only if the state court identifies the

4   correct governing legal principle from the Supreme Court's decisions but unreasonably applies

5   that principle to the facts of the prisoner's case.  *Id*.  The Supreme Court has made clear that a

6   state court's decision may be overturned only if the application is "objectively unreasonable."

7   *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).   AEDPA requires federal habeas courts to presume

8   the correctness of state courts' factual findings unless applicants rebut this presumption with

9   "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  In addition, review of state court

10  decisions under 28 U.S.C. § 2254(d)(1) is "limited to the record that was before the state court

11  that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

12                                       **EVIDENTIARY HEARING**

13          The decision to hold a hearing is committed to the Court's discretion.  *Schriro v.*

14  *Landrigan*, 550 U.S. 465, 473 (2007).  "[A] federal court must consider whether such a hearing

15  could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

16  the applicant to federal habeas relief."  *Landrigan*, 550 U.S. at 474.  In determining whether

17  relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

18  the state court.  *Cullen*, 131 S.Ct. at 1388.  A hearing is not required if the allegations would not

19  entitle petitioner to relief under 28 U.S.C. § 2254(d).  *Landrigan,* 550 U.S. at 474.  "It follows

20  that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a

21  district court is not required to hold an evidentiary hearing."  *Id.*; *see also Cullen,* 131 S. Ct.

22  1388 (2011).

23

24

1    Here, petitioner's claims rely on established rules of constitutional law. There are no

2    factual issues that could not have been previously discovered by due diligence. Finally, the facts

3    underlying petitioner's claims are sufficient to establish that a rational fact finder would have

4    found him guilty of the crime. Therefore, the Court concludes that an evidentiary hearing is not

5    necessary to decide this case and petitioner's claims may be resolved on the existing state record.

6                                        **DISCUSSION**

7    A.  Exhaustion

8        Respondent concedes that petitioner exhausted his six grounds for relief. Dkt. 33 at 7-8.

9    B.  Ground 1 – Violation of Right to Open and Public Trial: Sealing of Jury Questionnaires

10       In his first ground for relief, petitioner argues that the sealing of a written jury questionnaire

11   at the time of jury selection violated petitioner's right to a public and open trial. Dkt. 1-1 at 5.

12       i.   Trial court proceedings

13       Here, petitioner stipulated to the use of the State's proposed jury questionnaires which

14   provided that the questionnaires would be sealed and not made public. Dkt. 35, Exhibit 45 at 3.

15   The questionnaires provided:

16           This questionnaire is designed to elicit information about your qualifications to sit
             as a juror in a pending case, and to shorten the process of jury selection. Please
17           respond to the following questions as completely as possible. The information
             contained in this questionnaire will become part of the court's permanent record,
18           although all questionnaires will be sealed and will not be available to the general
             public. During the questioning by the attorneys and the Court, you will be given
19           an opportunity to explain or expand any answers if necessary. … Some of these
             questions may call for information of a personal nature that you may not want to
20           discuss in an open courtroom with the press and/or the public present. If you feel
             an answer may invade your right to privacy, you may circle the question number
21           to the left of the question. The Court will then give you an opportunity to explain
             your request for confidentiality in a closed hearing.
22
     Dkt. 35, Exhibit 45 (personal restraint petition) at attached Exhibit 6 (blank jury questionnaire).
23
         The trial court also explained how the questionnaires would be handled:
24

These questionnaires are going to be given to the court and to the attorneys. The questionnaires, after voir dire proceedings are done, are returned back to the clerk of court and they are shredded. They are not seen by anybody outside of the attorneys and the court that need to have this information. The copies are shredded. The originals are filed in a sealed file with the clerk of court for the record-keeping, so I want to let you – advise you of that as to these particular questionnaires.

Also, depending on answers to the questionnaires, there's a question in there about whether you would like to be examined or questioned outside the presence of other jury panel members, and be sure to consider that box there or check that if that is your request, and we will honor that request, also.

Dkt. 35, Exhibit 1 at 22–23.

The record reflects that the entire voir dire process was conducted in open court and on the record over the course of two days. *See* Dkt. 35, Exhibit 1 (Transcript of voir dire on April 20, 2004); Exhibit 2 (transcript of voir dire on April 21, 2004). The trial court questioned several jurors as a result of their answers to the jury questionnaires and the questioning occurred in open court. *See* Dkt. 35, Exhibit 1 at 32-33 (individual voir dire of Juror 1); *id.* at 34-46 (individual voir dire of Juror 2); Dkt. 35, Exhibit 2 at 189-99 (individual voir dire of Juror 39); *id.* at 227-33 (individual voir dire of Juror 56).

ii. Framework for Review

A criminal defendant has a right under the Sixth Amendment to a public trial. The Supreme Court has held that the Sixth Amendment right to a public trial extends to the *voir dire* of prospective jurors. *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984); *see also Presley v. Georgia*, 558 U.S. 209, 212-213 (2010). Total closure of a public trial, over the defendant's objection, must be analyzed under the following factors: "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must

1    consider reasonable alternatives to closing the proceeding, and it must make findings adequate to

2    support the closure." *Waller v. Georgia,* 467 U.S. 39, 48 (1984). The right to a public trial was

3    created for the benefit of defendants, and allows for the public to see that the accused is treated

4    fairly, helps ensure that the judge and prosecutor carry out their duties responsibly, encourages

5    witnesses to come forward, and discourages perjury. *Id.* at 46; *U.S. v. Sherlock,* 962 F.2d 1349,

6    1356 (9th Cir. 1989).

7         Although Supreme Court precedent provides the only relevant source of clearly

8    established federal law for AEDPA purposes, circuit precedent can be "persuasive authority for

9    purposes of determining whether particular state court decision is an 'unreasonable application'

10   of Supreme court law," and in ascertaining "what law is 'clearly established.'" *Duhaime v.*

11   *Ducharme,* 200 F.3d 597, 600–01 (9th Cir. 2000). The Second Circuit has held that an

12   unjustified closure that does not undermine the values furthered by the public trial guarantee

13   does not violate the Sixth Amendment. *Peterson v. Williams,* 85 F.3d 39, 42–43 (2nd Cir. 1996)

14   (20 minute closure found too trivial). Several other circuits have relied on *Peterson* to determine

15   whether a closure implicates an accused's right to a public trial. *See, e.g., Braun v. Powell,* 227

16   F.3d 908, 919 (7th Cir. 2000); (applying *Peterson* to hold that the exclusion of a single excused

17   juror from the trial did not implicate the right to a public trial); *United States v. Al–Smadi,* 15

18   F.3d 153, 154–55 (10th Cir. 1994) (applying *Peterson* to hold that the brief and inadvertent

19   closure of the courtroom did not implicate the Sixth Amendment).

20        The Ninth Circuit has applied *Peterson* to hold that a trivial closure of routine jury

21   administrative matters does not violate the Sixth Amendment where the closure does not

22   "involve[ ] the values that the right to a public trial serves[.]" *United States v. Ivester,* 316 F.3d

23

24

1   955 (9th Cir. 2003) (*citing Peterson,* 85 F.3d at 43 and *Waller,* 467 U.S. at 46–47) ("very brief"

2   closure to question jurors found too trivial to implicate the Sixth Amendment).

3          iii. <u>State Court Conclusion</u>

4          In his second personal restraint petition, petitioner raised the same contentions made here.

5   *See* Dkt. 35, Exhibit 45; Dkt. 1-1. The Washington Court of Appeals concluded that there was no

6   violation of petitioner's right to a public trial and therefore, denied relief. Dkt. 35, Exhibit 51 at

7   7-8; *In re Stockwell,* 160 Wn. App. at 180-81. The court stated:

8           Our Supreme Court recently held that a partial closure of voir dire proceedings
        is not necessarily structural error. *State v. Momah,* 167 Wn. 2d 140, 156 (2009)
9       [parallel citation omitted]. In *Momah,* the majority stated "[w]e have held that
        the remedy must be appropriate to the violation and have found a new trial
10      required in cases where a closure rendered a trial fundamentally unfair." *Momah,*
        167 Wn.2d at 150. Because Momah "affirmatively accepted the closure, argued
11      for the expansion of it, actively participated in it, and sought benefit from it," the
        court held that "the closure in this case was not a structural error' and reversal
12      was not the appropriate remedy."

13  Dkt. 35, Exhibit 45 at 5 [internal citations omitted].

14         The Court of Appeals further held that:

15      While the State proposed the questionnaires, Stockwell stipulated to their use and
        did not object to their sealing. He also actively participated in voir dire and used
16      the questionnaires to identify jurors who wanted to be questioned individually.
        We are satisfied that the questionnaire's promise of confidentiality made it more
17      likely jurors would candidly reveal incidents of sexual assault or abuse, providing
        critical information for Stockwell to use in challenging a juror for cause. Thus,
18      Stockwell benefitted from sealing the questionnaires.

19      An error is structural when it renders a criminal trial "'fundamentally unfair or an
        unreliable vehicle for determining guilt or innocence.'" *Momah,* 167 Wn.d at 149
20      (quoting *Washington v. Recuenco,* 548 U.S. 212, 218-219 (2006)). As discussed
        above, Stockwell used the questionnaires and benefitted from their sealing.
21      Moreover, the closure here was partial and, at most, affected only the public's
        right to "open" justice. Stockwell had full access to the questionnaires and the
22      parties questioned the jurors in open court.  As the various opinions and shifting
        alignments in *Momah* and *Strode* demonstrate, a majority of our Supreme Court is
23      apparently unwilling at this time to allow a defendant to assert the public's "open"
        justice rights. Because the error here, if any, was not structural, affected only the

24

1    public's right to "open" justice, and because Stockwell does not argue that he was
2    actually prejudiced, his argument that the trial court violated his public trial rights
     by sealing the juror questionnaires fails.

3    Dkt. 35, Exhibit 45 at 5-8 (*citing In re Pers. Restraint of Cook,* 114 Wn.2d 802, 813 (1990)

4    (holding a petitioner alleging constitutional error must show actual prejudice to prevail on a

5    personal restraint petition); *State v. Coleman,* 151 Wn. App. 614, 617, 623-624 (2009) (holding a

6    trial court erred by sealing jury questionnaires but that the error was not structural).

7          Nor does petitioner identify error in this habeas petition. Petitioner has failed to identify

8    any authority demonstrating that rejection of his claim was contrary to or an unreasonable

9    application of *Waller* or any other clearly established Supreme Court precedent. *See Waller,* 467

10   U.S. at 46 ("The requirement of a public trial is for the benefit of the accused."). First, nothing in

11   the record reflects that voir dire was closed to the public at any time.  Here, the questionnaires

12   were not sealed until after voir dire was completed and the jury was selected. *See* Dkt. 35,

13   Exhibit 45 at attached Exhibit 6; *See also* Dkt. 35, Exhibit 1 at 22-23. The jurors were questioned

14   on the content of the questionnaires in open court. *See* Dkt. 35, Exhibits 1, 2. Whatever language

15   relating to access the trial judge used in court or was included in the questionnaires, there is no

16   showing that the public was precluded from viewing the questionnaires at any point prior to jury

17   selection. *See* Dkt. 35, Exhibit 45 at attached Exhibit 6; *See also* Dkt. 35, Exhibit 1 at 22-23. Nor

18   does petitioner contend that anyone was precluded from attending the questioning of the jurors in

19   open court regarding the questionnaire content. Even assuming, for the sake of argument, that the

20   sealing of jury questionnaire's constituted a partial closure, the closure was too trivial and

21   limited to implicate the Sixth Amendment. The "closure" was limited to the sealing of jury

22   questionnaires and was done to ensure that jurors would be honest in their answers.

23

24

1    Further, petitioner agreed to the proposed jury questionnaire and stipulated to its use, and

2    the questionnaire explicitly provided that the questionnaire would be sealed and not made public.

3    Dkt. 45 at 3 ("The prosecutor proposed the questionnaire. Defense counsel 'stipulated' to the use

4    of the questionnaire. The cover sheet to the questionnaire … further states that the 'information

5    contained in this questionnaire will become part of the court's permanent record, although all

6    questionnaires will be sealed and will not be available to general public.'"); Dkt. 1-1 at 5. Orally,

7    the trial court judge stated that after voir dire was completed, "the questionnaires … are returned

8    back to the clerk of the court and they are shredded. They are not seen by anybody outside of the

9    attorneys and the court that need to have this information. The copies are shredded. The originals

10   are filed in a sealed file with clerk of the court for record-keeping." Dkt. 35, Exhibit 1 at 22-23.

11   Thus, while the trial court did not conduct an analysis and identify the reasons for sealing the

12   jury questionnaires, it was because no objections were raised and petitioner stipulated to the use

13   of the questionnaires and sealing of the questionnaires. Nothing in the record demonstrates that

14   petitioner broached the subject of public access to the questionnaires after voir dire until his

15   second personal restraint petition and this Court will not speculate how the trial court would have

16   ruled had anyone raised an objection to the sealing of the questionnaires. Petitioner, under these

17   circumstances, does not demonstrate an infringement of his public trial rights. [Marissa – watch

18   out.  It is not for us to agree or disagree, it is whether the court of appeals has violated clearly

19   established federal law.]Under this set of facts, petitioner does not show, nor does the Court find,

20   that the state court confronted facts which were materially indistinguishable from a relevant

21   United States Supreme Court precedent and arrived at the opposite result or that the state court

22   unreasonably applied the correct legal standard to the facts of petitioner's case. In sum, petitioner

23   fails to demonstrate the state court's adjudication of his claim was contrary to or an unreasonable

24

REPORT AND RECOMMENDATION - 12

1  application of clearly established federal law as determined by the United States Supreme Court,

2  or to otherwise demonstrate any violation of his constitutional rights.  Thus, the Court should

3  deny habeas relief as to this claim.

4  C.  Ground 2 – Violation of Rights to a Jury Trial and Due Process: Jury Selection Process

5       In his second ground for relief, petitioner claims his Sixth and Fourteenth Amendment

6  rights to a jury trial and due process were violated during the jury selection process. Dkt. 1-1 at

7  6. Petitioner alleges that at trial, "the judge applied different standards for determining

8  challenges for cause depending on whether the juror had expressed initial biases in favor of the

9  State (Jurors Nos. 2 and 39) or whether the juror expressed initial biases against the State (Juror

10 No. 56)." *Id.*

11      Upon habeas review, determinations as to individual juror bias in both trial and capital

12 sentencing juries are factual questions entitled to the presumption of correctness. *Wainwright v.*

13 *Witt,* 469 U.S. 412 (1985). *See also Darden v. Wainwright,* 477 U.S. 168, 175 (1986); *Patton v.*

14 *Yount,* 467 U.S. 1025 (1984) (finding that impartiality of individual jurors is a question of fact).

15 "Deference to the trial court is appropriate because it is in a position to assess the demeanor of

16 the venire, and of the individuals who compose it, a factor of critical importance in assessing the

17 attitude and qualifications of potential jurors." *Uttecht v. Brown,* 551 U.S. 1, 9 (2007). A

18 petitioner must rebut such a finding by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

19      The Sixth Amendment to the Constitution guarantees criminal defendants a trial by

20 impartial, indifferent jurors. U.S. Const, amend. VI. A trial judge must exclude potential jurors

21 who are unable to set aside their preconceptions and decide the case on the evidence presented

22 in court. *Irwin v. Dowd,* 366 U.S. 717, 722–23 (1961). However, peremptory challenges to

23 prospective jurors are not of federal constitutional dimension. *Ross v. Oklahoma,* 487 U.S. 81,

24

88 (1992).  If the trial court erroneously denies the defendant's challenge for cause to prospective jurors, the defendant is free to use a peremptory challenge and cure that error. *United States v. Martinez-Salazar,* 528 U.S. 304, 307 (2004). If the defendant uses the peremptory challenge and is subsequently convicted by jury in which no biased juror sat, the defendant has not been deprived of any constitutional right. *Id.; Morgan v. Illinois,* 504 U.S. 719, 729 (1992).

In this case, Juror 2 expressed concern in her questionnaire because her relative had been convicted of a crime involving the abduction of a young girl, with a possible sexual motive. Dkt. 35, Exhibit 1 at 34. Juror 2 also admitted that she had a "weak stomach" and would be  affected if the trial involved the presentation of graphic evidence. *Id.* at 35. However, Juror 2 said that she "could probably be fair, because everyone's lives are at stake here and everyone . . . deserves the same chance to have a good life." *Id* at 39. Juror 2 also stated that if she had a bias, it would be on behalf of a child, but she also believed that she would take everything the child said into consideration to make a determination on the child's testimony. *Id.* at 39, 42-43. The defense challenged Juror 2 for cause, *id.* at 48, but the trial court denied the challenge:

> Based on what I have seen so far, I am going to deny the motion for cause. She was very explicit about what could cause her to faint. It would be graphic, pictorial-type depictions of medical procedures, and we don't have that in this case. I thought her answers were very thoughtful about what a serious matter this was, and thoughtful responses, and she also indicated she could separate her cousin's situation from the facts of this case. So at this point I will deny the challenge for cause.

*Id.* at 49.  The defense later used a peremptory challenge to excuse Juror 2. Dkt. 35, Exhibit 2 at 379.

In Juror 39's questionnaire, he stated that his daughter had been raped about 18 years earlier, which might cause him to be less than fair and impartial. Dkt. 35, Exhibit 2 at 189-90.

1  When asked if he could be fair to the defense, he stated "[i]t's hard to say, because I usually get

2  emotional. Child molestation, sexual abuse is hard for me to take because of the victim.

3  Inasmuch as I would really like to participate, I'd like to be fair to the accused. I don't know

4  whether he did it or not." *Id.* at 190-91. Juror 39 stated that he could compartmentalize his

5  feelings and set aside any inappropriate influences. *Id*. at 193-95; 196. The defense challenged

6  him for cause based on his strong feelings about sexual abuse. *Id*. at 199-200.

7         The trial court agreed that Juror 39 posed a more difficult question than Juror 2, but still

8  denied the defense's challenge:

9         The motion for cause will be denied. This is a close call, I would agree, but to the
          critical questions [Juror 39] gave appropriate answers, and that he would not let
10        the emotions get in the way of listening to the testimony or analyzing the
          testimony. He could compartmentalize and put aside his own feelings about
11        sexual abuse and child molestation. So I will deny the motion.

12 *Id*. at 201. The defense exercised a peremptory challenge to excuse Juror 39. Dkt. 35, Exhibit 2,

13 at 382.

14         Juror 56 had strong opinions about the criminal justice system because his cousin had

15 been wrongly accused of molesting his stepdaughter. Dkt. 35, Exhibit 2 at 227. Juror 56 believed

16 he would be biased in favor of the defense. *Id*. at 228. When he was asked how his family's

17 experience might affect his ability to weigh the testimony of the two girls who would testify at

18 petitioner's trial, he conceded "I think I might be a little more biased, you know, thinking maybe

19 they would be untrue or not saying the whole truth." *Id*. at 229-30. He was not sure he would be

20 able to set aside his negative presumptions about the truthfulness of child witnesses:

21        I would have a hard time not listening to their testimony with a tainted ear
          thinking, maybe, you know, they are not telling the truth, maybe they are bringing
22        up false charges, you know. ... Even though with the evidence and everything, I
          still think that would be back there because of the situation with my cousin. Gosh.
23        I would always have that doubt, you know, are they being truthful, even with the
          evidence. Boy, it would be hard.

24

REPORT AND RECOMMENDATION - 15

*Id*. at 231-32.  Juror 56 then admitted he "might not be able to give [the State] a fair trial." *Id*. at

232. The State challenged Juror 56 for cause and argued that he was biased in favor of the

defense and would not be able to set aside his preconceptions and be impartial. *Id*. at 233-34. The

defense opposed the State's motion. *Id*. at 233. The court granted the State's challenge and

agreed that Juror 56 was biased:

> He [Juror 56] clearly stated he could not keep an open mind, that he would start with a – it wouldn't be a level playing field, would start with the presumption that there was a lie and work from there to determine what the truth was. So, this juror will be excused.

*Id*. at 235.

On appeal, after reviewing the voir dire transcript, the Washington Court of Appeals

rejected petitioner's argument that the trial court employed two different legal standards in ruling

on the parties' challenges for cause:

> The trial court denied Stockwell's challenges for cause to jurors 2 and 39 because each had stated that he or she could be fair and set aside his or her personal experiences. The trial court excused juror 56 on the State's challenge for cause because he could not keep an open mind and would start with the presumption that the State's witnesses were lying.
>
> Equivocal answers alone do not require that a juror be removed when challenged for cause. *State v. Rupe*, 108 Wn.2d 734, 749, 743 P.2d 210 (1987). The question is whether a juror with preconceived ideas can set them aside. *Rupe*, 108 Wn.2d at 749. The trial court is best situated to determine a juror's competency to serve impartially. *Rupe*, 108 Wn.2d at 749. Here, jurors 2 and 39 each committed to keeping an open mind. In contrast, juror 56 was unequivocal in his contention that he was partial to the defendant and would assume the children were lying. Contrary to Stockwell's argument, presuming that the State's witnesses are lying is not a proper articulation of the presumption of innocence. The State is also entitled to an impartial jury. *See State v. Elmore*, 155 Wn.2d 758, 773, 123 P.3d 72 (2005). The trial court did not abuse its discretion in ruling on these challenges.
>
> Moreover, Stockwell used two peremptory challenges to dismiss jurors 2 and 39, and he does not argue that any biased juror sat on his jury. Criminal defendants have a constitutional right to an impartial jury. Wash. Const. art. I, § 22. As long

1    as the selected jury is impartial, the fact that Stockwell had to use a peremptory
      challenge to ensure that result does not violate his right to an impartial jury. *State*
2    *v. Fire*, 145 Wn.2d 152, 162, 34 P.3d 1218 (2001).

3    Dkt. 35, Exhibit 51 at 10-11.

4         The trial court's determination that Juror 2 and Juror 39 could be impartial and that Juror

5    56 could not be impartial has support on the record. Although the statements made by Juror 2

6    and Juror 39 hinted at possible bias against sexual offenders due to past experiences, both stated

7    that they could set aside these experiences and be fair. In contrast, Juror 56 never explicitly

8    stated that he could be an impartial juror and stated "I think I might be a little more biased." Dkt.

9    35, Exhibit 2 at 229-230.

10        In his petition, petitioner argues that the trial court applied different standards for

11   determining challenges for cause depending on the bias expressed towards the defense or the

12   state.  Dkt. 1-1 at 6. However, as noted by the Court of Appeals, the record reflects that the trial

13   court did not use two different standards in determining the parties' challenges for cause and

14   properly determined that Jurors 2 and 39 could be impartial and that Juror 56 could not be

15   impartial. Further, petitioner exercised peremptory challenges against Jurors 2 and 39 and they

16   did not sit on the jury. As the Supreme Court has held, a defendant's use of a peremptory

17   challenge to achieve an impartial jury does not violate the Sixth Amendment. *See Ross,* 487 U.S.

18   at 88.

19        Because petitioner has not presented clear and convincing evidence to overcome the state

20   court's finding that Jurors 2 and 39 could be impartial or that Juror 56 could not be impartial, the

21   finding is presumed correct. *See* 28 U.S.C. § 2254(e)(1). The Washington Court of Appeals then

22   reviewed the relevant record of the voir dire proceeding and exercised appropriate deference to

23   the trial court judge's discretion in ruling on the individual challenges for cause. Furthermore,

24

1   the Washington Court of Appeals' ruling that petitioner was able to cure any error by exercising

2   peremptory challenges to dismiss Jurors 2 and 39 is consistent with the United States Supreme

3   Court precedent.  *See Martinez-Salazar,* 528 U.S. at 307*; Ross,* 487 U.S. at 88. Accordingly, the

4   Washington Court of Appeals conclusion that petitioner's right to an impartial jury was not

5   violated was not an unreasonable application of, or contrary to, clearly established federal law

6   and the Court recommends that Ground 2 be denied.

7   D.  Ground 3 – Violation of Due Process: Retroactive Application of RCW 9A.44.070

8           In his third ground for relief, petitioner challenges the Washington Supreme Court's 2007

9   ruling that his 1986 crime was legally comparable to first-degree rape of a child and that this

10  conviction could be considered in determining whether he was a persistent offender under the

11  POAA, RCW 9.94A.030(37)(b).  Dkt. 1-1 at 6-7. After petitioner pled guilty to his 1986 crime,

12  the crime of first-degree statutory rape under RCW 9A.44.070, the statute was replaced by the

13  new offense of first-degree rape of a child under RCW 9A.44.073. *See* 1988 Laws of

14  Washington, chapter 145, § 2 (new crime of first-degree rape of a child) and § 24(1) (repeal of

15  first-degree statutory rape). The Washington Supreme Court held in *State v. Stockwell* that the

16  former crime of first-degree statutory rape (RCW 9A.44.070) included an implied element of

17  nonmarriage and therefore petitioner's 1986 crime was legally comparable to first-degree rape

18  of a child (RCW 9A.44.073). Dkt. 35, Exhibit 15 at 3-6; *State v. Stockwell*, 159 Wn.2d at 397-

19  99. Thus, the Washington Supreme Court held that petitioner's 1986 conviction could be

20  considered in determining whether he was a persistent offender under the POAA and that he was

21  eligible for a sentence of life without parole.

22      In analyzing the legal comparability of the two statutes, the Washington Supreme Court

23  held:

24

[I]f the elements of the strike offense and the elements of the foreign (or prior) crime are comparable, the former (or prior) crime is a strike offense. [*In re Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005).] Legal comparability analysis is not an exact science, but when, for example, an out-of-state statute criminalizes more conduct than the Washington strike offense, or when there would be a defense to the Washington strike offense that was not meaningfully available to the defendant in the other jurisdiction or at the time, the elements may not be legally comparable. *See Lavery*, 154 Wn.2d at 256–57.

Only one element concerns us here. The legislature has added a statutory element to first degree rape of a child, nonmarriage. RCW 9A.44.073(1). The former statutory rape statute, however, did not mention marriage. *See* former RCW 9A.44.070 (1986), *repealed by* Laws of 1988, ch. 145, § 24(1). Stockwell argues that the modern statute criminalizes less conduct (by exempting sexual contact between spouses) and provides a defense (of marriage) that would not have been available under the prior law. The Court of Appeals rejected his claim because it found that nonmarriage was an implied, nonstatutory element of the crime of statutory rape and thus the elements were comparable. *State v. Stockwell*, 129 Wn. App. 230, 235, 118 P.3d 395 (2005).

In the 1980s, divisions of the Washington State Court of Appeals split on whether nonmarriage was an implied element of first degree statutory rape: Division Two finding it was, Division One finding it was not. *State v. Bailey*, 52 Wn. App. 42, 46-47, 757 P.2d 541 (1988), *aff'd on other grounds*, 114 Wn.2d 340, 787 P.2d 1378 (1990); *State v. Hodgson*, 44 Wn. App. 592, 599, 722 P.2d 1336 (1986), *aff'd on other ground*, 108 Wn.2d 662, 740 P.2d 848 (1987).

In *Bailey*, a defendant was charged with first degree statutory rape of a three-year-old child. The jury was instructed that if it could not reach a verdict on that charge, it could consider whether the defendant had committed indecent liberties as a lesser included offense. The jury returned a verdict for indecent liberties and Bailey appealed. Bailey argued that, per *Hodgson*, indecent liberties was not a lesser included offense of first degree statutory rape since indecent liberties contained an element not present in first degree statutory rape: nonmarriage.

Division Two disagreed. It concluded:

> [t]he analysis in *Hodgson* leads to absurd results. First, the Legislature cannot possibly have contemplated statutory rape in the first degree [as] being perpetrated on one's spouse. In the unlikely event that a child of 10 years [old] or less establishes sufficient necessity to receive permission from the superior court to marry, it is inconceivable that the Legislature intended to criminalize consensual sexual intercourse between spouses, regardless of their ages. The fact that the Legislature did not expressly make nonmarriage an element of first degree statutory rape can lead to only one logical conclusion: the Legislature did not expect that children

under the age of 10 would be marrying. Therefore, the only plausible reading of former RCW 9A.44.070 is to consider nonmarriage an implicit element of the crime.

*Bailey*, 52 Wn. App. at 46. We agree with Division Two that it is simply inconceivable that the legislature would expect that children 10 years old or less would marry. Nonmarriage is an implied element of the crime of first degree statutory rape.

Further, our purpose today is to determine what the legislature intended. *Cf. State v. Calle*, 125 Wn.2d 769, 777-78, 888 P.2d 155 (1995). The legislature added this comparability clause after a court declined to infer one. *See State v. Delgado*, 148 Wn.2d 723, 725, 63 P.3d 792 (2003) and Laws of 2001, ch. 7, § 2(31)(b)(ii). Given the apparent impetus for adding a comparability clause to the POAA, given *Bailey*, and given the legislative history of these statutes, we hold as a matter of law that first degree statutory rape under former RCW 9A.44.070(1) and first degree rape of a child under RCW 9A.44.073(1) are comparable. *See* RCW 9.94A.030(33)(b), .570.

Dkt. 35, Exhibit 15 at 3-6; *State v. Stockwell*, 159 Wn.2d at 397-99 (footnotes omitted).

Federal habeas relief does not lie for mere errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 67 (1991).  A state court has the last word on the interpretation of state law. *McSherry v. Block,* 880 F.2d 1049, 1052 (9th Cir. 1989). Consequently, this Court is bound by the Washington Supreme Court's interpretation of the legal comparability of RCW 9A.44.070 and RCW 9A.44.073 and the application of the POAA.

The issue remaining here is whether the due process aspect of the Washington Supreme Court's decision was objectively unreasonable. Due process requires that a criminal statute "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. *Bouie v. City of Columbia,* 379 U.S 347, 351 (1964). Thus, a court's unforeseeable and retroactive judicial expansion of a criminal statute without prior notice violates due process. *Rogers v. Tennessee,* 532 U.S. 451, 457 (2001); *Mendez v. Small,* 298 F.3d 1154, 1158 (2002). However, the United States Supreme Court held that "[t]his Court has never found a due process

violation … where a state supreme court, squarely addressing a particular issue for the first time, rejected a consistent line of lower court decisions based on the supreme court's reasonable interpretation of the language of a controlling statute." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1792 (2013).

The Washington Court of Appeal's interpretation of RCW 9A.44.070 and the POAA did not make previously lawful conduct illegal or result in "an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie,* 378 U.S. at 352. It was not unreasonable for the Washington Supreme Court to reject petitioner's argument that the modern statute criminalizes less conduct – by leaving out sexual conduct between spouses and providing a defense of marriage – when such an interpretation would be inconsistent with the statutory history and scheme and legislative intent envisioned by the statute. Even though the Washington Supreme Court had never addressed the legal comparability issue, the decision in *State v. Stockwell* that adopted the Washington Court of Appeals' reasoning in *Bailey* was not unforeseeable or unexpected. Under *Mertish,* the Washington Supreme Court's decision clearly falls outside the realm of due process violations. *Mertish,* 133 S.Ct at 1792 (no due process violation where a state supreme court addresses an issue for the first time and rejects a consistent line of lower court's decision based on the interpretation of a statute). Accordingly, petitioner has not demonstrated that the Washington Supreme Court's interpretation of state law violated his rights to a jury trial or due process, nor was it an unreasonable application of clearly established federal law. Accordingly, the undersigned recommends that petitioner is not entitled to federal habeas relief on this claim and recommends that it be denied.

//

//

1    E.   Ground 4 – Violation of Rights to a Jury Trial and Due Process: 2004 Sentence and
2         Constitutional Validity of POAA as Bill of Attainder and Violation of the Guarantee Clause

3         In his fourth ground of relief, petitioner alleges that the imposition of a life sentence

without parole was based on a judicial, non-jury finding that petitioner had committed a prior

qualifying offense – the 1986 statutory rape conviction – that was not pled and proven to the

jury beyond a reasonable doubt. Dkt. 1-1 at  7. Petitioner alleges that this violated his rights to a

jury trial and due process of law. *Id.* Petitioner also alleges that the POAA "two strikes" law

under which he was convicted, constitutes an unlawful bill of attainder and violates the

guarantee clause because it was enacted through Washington state's initiative process. *Id.* These

claims are without merit.

        i.    Due Process and Right to a Jury Trial

        Petitioner's argument that a jury must determine prior convictions is directly contradicted

by the holdings of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466,

490 (2000) and *Blakely v. Washington*, 542 U.S. 296, 301 (2004). In *Apprendi*, the United States

Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490. Four years later the Supreme

Court held in *Blakely* that "the 'statutory maximum' for *Apprendi* purposes is the maximum a

judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by*

*defendant,"* explaining further that:

> In other words, the relevant "statutory maximum" is not the maximum sentence a
> judge may impose after finding additional facts, but the maximum he may impose
> *without* any additional findings. When a judge inflicts punishment that the jury's
> verdict alone does not allow, the jury has not found all the facts "which the law
> makes essential to the punishment," ... and the judge exceeds his proper authority.

*Blakely,* 542 U.S. at 303. (emphasis in original) (internal citation omitted).

After review of petitioner's direct appeal to the Washington Court of Appeals, the court held:

> Stockwell further argues that the trial court violated the Sixth Amendment in relying on a "judicially determined fact" (i.e. that he was not married to his 1986 victim), rather than a jury verdict or his own admission, "to impose a greater sentence than allowed by the jury's verdict," contrary to *Blakely.* Because we uphold the trial court's analysis finding Stockwell's prior conviction legally comparable to a current strike offense, we need not address Stockwell's arguments concerning factual comparability.
>
> Accordingly, we affirm the trial court's sentencing of Stockwell as a persistent offender.

Dkt. 35, Exhibit 11 at 6.

Petitioner fails to show that the state court adjudication of this issue was contrary to, or involved an unreasonable application of clearly established federal law. As determined in *Apprendi* and *Blakely,* petitioner's prior conviction does not need to be presented to the jury. The Court finds that the Washington state court's reasoning and determination was proper here, and that it was in line with both Washington state law of legal comparability and the United States Supreme Court in *Apprendi* and *Blakely*. In addition, relief on this issue is not available because the relief requested is barred under the non-retroactivity doctrine of *Teague v. Lane*, 489 U.S. 288 (1989), which holds that a new rule may not be announced or applied in a habeas case (a rule is new if "the result was not *dictated* by precedent existing at the time the defendant's conviction became final.") *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (*quoting Teague v. Lane*, 489 U.S. at 301) (emphasis in original)). Thus, the Court recommends that petitioner be denied relief as to this claim.

//

//

ii.     Unlawful Bill of Attainder

Petitioner alleges that the POAA violates the Constitution because it is a bill of attainder. Dkt. 1-1 at 7. The United States Constitution provides that "[n]o Bill of Attainder ... shall be passed." U.S. Const. Art. I, § 9, cl. 3. A bill of attainder has been traditionally defined as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425, 468 (1977)).

To constitute a bill of attainder, the following requirements must be met: "(1) the statute specifies the affected persons, (2) the statute inflicts punishment, and (3) the punishment is inflicted without a judicial trial." *Selective Service System v. Minnesota Public Interest Research Group,* 468 U.S. 841, 852 (1984) (*citing Nixon,* 433 U.S. at 473, 474-76)).

In *State v. Thorne*, 129 Wn.2d 736 (1996), the Washington Supreme Court rejected a challenge to Washington's POAA, finding that the first and third elements of bill of attainder were not present. *Id.* at 759-60 (*citing Selective Service,* 468 U.S. at 847). The Washington Supreme Court held that the first element was not present because the POAA "does not specify the persons sought to be punished or identify them by past conduct." *Id.* at 759. Further, the "third characteristic of a bill of attainder is also not present in the [POAA] since a trial is required to determine the guilt of a defendant, and a judicial sentencing hearing is necessary to determine the existence of the two prior 'strike' offenses. The requisite fact-finding is performed by the judiciary, not by the legislature." *Id.* at 760.

With regard to petitioner's bill of attainder claim, on direct appeal, the Washington Court of Appeals held that because petitioner's claim that the POAA constituted a bill of attainder had already been resolved by the Washington Supreme Court contrary to petitioner's claims, no

1   further consideration was necessary. Dkt. 35, Exhibit 11 at 6-7, n.8 (*citing State v. Thorne*, 129

2   Wn.2d 736 (1996)).

3        Here, petitioner does not show that the state court adjudication of his claims was contrary

4   to or an unreasonable application of clearly established federal law. There are no United States

5   Supreme Court cases holding that a similar statute violates the bill of attainder clause. The Court

6   of Appeals' rejection of petitioner's argument under the authority of *Thorne,* using the standard

7   determined by the United States Supreme Court in *Selective Service,* was a reasonable

8   application of clearly established federal law for purposes of 28 U.S.C. § 2254(d)(1). Thus, the

9   Court recommends that petitioner's ground for relief with respect to the bill of attainder clause

10  be denied.

11       iii.    Violation of Guarantee Clause

12       Petitioner also contends that the POAA violates the guarantee clause of the United States

13  Constitution because the POAA was enacted through the initiative process rather than by the

14  legislature. Dkt. 1-1 at 7.

15       The guarantee clause of the United States Constitution which directs the United States to

16  "guarantee to every State … a Republican Form of Government." Const. Art. IV § 4. The United

17  States Supreme Court has held that challenges under the guarantee clause to a state's use of the

18  initiative and referendum process are nonjusticiable under the "political question" doctrine.

19  *Pacific States Telephone & Telegraph Co. v. Oregon*, 223 U.S. 118, 140-51 (1912) (challenge to

20  initiative and referendum provisions of state constitution); *see also Ohio ex rel. Davis v.*

21  *Hildebrant*, 241 U.S. 565, 569-70 (1916) (same). *But see New York v. United States*, 505 U.S.

22  144, 184-85 (1992) ("perhaps not all claims under the Guarantee Clause present nonjusticiable

23  political questions").

24

In petitioner's case, the Washington Court of Appeals rejected this argument on the basis that the Washington Supreme Court had previously held that any challenge to the POAA based on the guarantee clause would be frivolous. *See* Dkt. 35, Exhibit 11, at 7 & n.8 (*citing State v. Davis*, 133 Wn.2d 187, 943 P.2d 283 (1997)). The *Davis* court concluded that there was no merit to such a claim, *id*. at 191-92 (*citing New York,* 505 U.S. at 184-85 and *Pacific States,* 223 U.S. at 140-51), and held that:

> [n]o court in this or any other jurisdiction has invalidated any law on the ground that its passage by initiative violated the Guarantee Clause. In order to reach that conclusion, the court would have to hold both that the issue is justiciable and that either the initiative process itself or the use of that process to adopt certain kinds of laws is inconsistent with the constitutional notion of a "republican form of government."

*Id.* at 190-91.

As explained by the Washington Court of Appeals, petitioner has failed to establish that the POAA violates the guarantee clause of the Constitution. Petitioner fails to show that the Washington Court of Appeal's argument under the authority of *Davis* was a reasonable application of clearly established federal law for purposes of 28 U.S.C. § 2254(d)(1). Thus, the Court recommends that petitioner's ground for relief with respect to the guarantee clause be denied.

F.   Ground 5 – Ineffective Assistance of Counsel on Direct Appeal

Petitioner argues that his appellate counsel provided ineffective assistance of counsel on direct appeal by (1) failing to order the transcripts of voir dire, (2) failing to raise the issues related to voir dire and jury selection and (3) failing to properly brief the comparability issue regarding his 1986 conviction. Dkt. 1-1 at 8.

Under the Due Process Clause of the Fourteenth Amendment, criminal defendants are entitled to the assistance of counsel on criminal appeals as of right. *Douglas v. California*, 372

U.S. 353 (1963). The due process right to appellate counsel also includes the right to the effective assistance of appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 397 (1985). The proper standard for evaluating petitioner's claim that appellate counsel was ineffective is that enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984). *See Smith v. Murray,* 477 U.S. 527, 535-536 (1986) (applying *Strickland* to a claim of attorney error on appeal). Petitioner must show that (1) his counsel was objectively unreasonable, *see Strickland,* 466 U.S. at 687-91, in failing to find arguable issues to appeal – that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them – and (2) reasonable probability that, but for counsel's failure to raise the issue, petitioner would have prevailed on his appeal. *Smith v. Robbins,* 528 U.S. 259, 285-86 (2000).

To establish deficient performance, a petitioner must demonstrate that the representation he received "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Moreover, due to the difficulties inherent in evaluating the contested behavior from counsel's perspective at the time, there exists a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance." *Id*. at 689. Thus, a petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.*

To establish prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. In addition, individual deficiencies that may not by themselves meet the *Strickland* prejudice standard may, when considered cumulatively, constitute sufficient prejudice to justify granting the writ. *Harris v. Wood,* 64 F.3d 1432, 1438 (9th Cir. 1995).

1   Petitioner argues that his appellate counsel failed to order the transcript of voir dire,

2   omitted claims on direct appeal concerning the jury selection procedures, and failed to properly

3   brief the comparability issue. Dkt. 1-1 at 8.

4
     i. Failure to order transcript of voir dire and omission of claims concerning jury
5      selection procedures

6   Petitioner faults appellate counsel for failing to order the transcript of voir dire on direct

7   appeal and failing to raise claims related to the voir dire process and jury selection. *Id.* When

8   petitioner raised this issue in his second personal restraint petition, the Washington Court of

9   Appeals held that the trial court's sealing of the jury questionnaires did not violate petitioner's

10  right to a public trial and that the jury selected for petitioner's trial was fair and impartial. Dkt.

11  35, Exhibit 51 at 7-8, 17-18. The court also held that appellate counsel's representation was not

12  ineffective:

13  > [Petitioner] cannot show that counsel's failure to order the voir dire transcripts
    > prejudiced him. As we have discussed, the trial court did not err in conducting
14  > voir dire or ruling on challenges. Thus, [petitioner] cannot show that the outcome
    > of his appeal would have differed had counsel ordered the voir dire transcript and
15  > made the arguments he now makes. Accordingly, [petitioner] has not shown that
    > he was denied effective representation by appellate counsel.
16
17  Dkt. 35, Exhibit 51 at 14-15 (citations omitted).

18  Here, there is also no basis to conclude that the performance of petitioner's counsel was

19  deficient. The Washington Court of Appeals concluded that the trial court did not err in

20  conducting voir dire or ruling on challenges. Dkt. 35, Exhibit 51 at 14-15. Because this claim

21  was included in petitioner's second personal restraint petition, it was before the Washington

22  courts and therefore, any failure by his appellate counsel to raise the same claim could not have

23  prejudiced him. Further, the Washington Court of Appeals reasonably found that counsel's

24  conduct was not ineffective and did not affect the outcome of the trial. Petitioner has failed to

REPORT AND RECOMMENDATION - 28

demonstrate that the state appellate court's rejection of this claim was contrary to, or an unreasonable application of, established federal law as determined by the United States Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented. Thus, the Court recommends that this claim with respect to counsel's failure to raise the voir dire and jury selection issues be denied.

ii.     Failure to properly brief 1986 comparability issue

Petitioner contends that appellate counsel "did not properly argue the comparability issue." Dkt. 1-1 at 8. In his second personal restraint petition, he argues "while counsel did raise an issue on direct appeal concerning the comparability of the prior conviction, the briefing does not address key points such as the history of the sexual assault and marriage statutes in Washington or elements other than nonmarriage that distinguish statutory rape in the first degree from first degree rape of a child." Dkt. 35, Exhibit 46 at 63.

The comparability issue was raised as a part of counsel's challenge to petitioner's life sentence under the POAA. Dkt. 35, Exhibit 7 at 11-13; Exhibit 10 at 3-4. The Washington Court of Appeals issued its opinion affirming the trial court and appellate counsel sought discretionary review by the Washington Supreme Court. Dkt. 35, Exhibit 12 at 5-8. Appellate counsel presented the comparability as her first argument in her petition for review and once the Washington Supreme Court granted review, appellate counsel submitted a thirteen-page brief on the comparability claim. Dkt. 35, Exhibit 13.

In addition to finding that petitioner had failed to show that appellate counsel's failure to order the voir dire transcripts prejudiced him, the Washington Court of Appeals also held that petitioner had not shown "he was prejudiced by his first appellate counsel's briefing on the comparability analysis. Although [petitioner's] current attorney has argued legal theories not

1  argued by his former counsel, he cannot demonstrate that the Supreme Court would likely have

2  reached a different result had the new legal theories been raised." Dkt. 35, Exhibit 51, at 14-15

3  (internal citations omitted).

4      Petitioner has not shown ineffective assistance or prejudice and the Washington Court of

5  Appeal's denial of his claim was not contrary to or an unreasonable application of clearly

6  established law as determined by the United States Supreme Court and therefore, this claim with

7  respect to appellate counsel's failure to properly brief the comparability issue should be denied.

8  G.  Ground 6 – Constitutional Validity of 1986 Sentence

9      Petitioner is in custody pursuant to his 2004 conviction, by jury trial, of first degree child

10  molestation and one count of attempted first-degree child molestation. Dkt. 35, Exhibit 6. His

11  1986 conviction became final  on October 25, 1989. Dkt. 35, Exhibit 18 at App. F (Certificate

12  and Order of Discharge, *State v. Stockwell*, Pierce County Cause No. 86-1-00878-2).  Over

13  twenty-nine years after his conviction expired, petitioner attempts to challenge his conviction in

14  this Court. Under *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 404 (2001), in a 28

15  U.S.C. § 2254 federal habeas corpus action, petitioner can only challenge the fully expired 1986

16  conviction on the basis of a failure to be appointed counsel in violation of the Sixth Amendment.

17  Petitioner does not make such a claim in his petition and the judgment and sentence in his 1986

18  proceeding demonstrate representation by an attorney. Dkt. 35, Exhibit 18 at App. C. Thus,

19  petitioner is not in custody under the 1986 conviction and may not challenge his 2004 sentence

20  under § 2254 on the ground that the 1986 conviction was unconstitutional.

21      A habeas corpus petitioner is not "in custody" under a conviction for purposes of federal

22  habeas jurisdiction under 28 U.S.C. § 2254 when the sentence imposed for the conviction has

23  fully expired at the time the petition was filed. *Maleng v. Cook*, 490 U.S. 488, 492 (1989).  The

24

1  collateral consequences flowing from a criminal conviction (e.g., inability to vote or to engage in

2  certain businesses) may survive the expiration of the sentence, but the collateral consequences of

3  a conviction are not themselves sufficient to render a petitioner "in custody" for purposes of a §

4  2254 challenge. *Id.*; *see also Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968).  The *Maleng*

5  Court did not resolve the issue concerning the extent to which a § 2254 petitioner may challenge

6  a prior conviction that enhances the sentence he is currently serving.  *Id.* at 494.

7  However, in *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394 (2001), the United

8  States Supreme Court held that petitioners may not challenge the validity of a prior conviction

9  that has now expired.

10  [W]e hold that once a state conviction is no longer open to direct or collateral
    attack in its own right because the defendant failed to pursue those remedies while
11  they were available (or because the defendant did so unsuccessfully), the
    conviction may be regarded as conclusively valid . . . . If the conviction is later
12  used to enhance a criminal sentence, the defendant generally may not challenge
    the enhanced sentence through a petition under § 2254 on the ground that the
13  prior conviction was unconstitutionally obtained.

14  *Lackawanna*, 532 U.S. at 403-04.

15  The Court recognized one exception to this general rule: a petitioner may challenge a

16  prior, expired conviction "on the basis that the prior conviction used to enhance the sentence was

17  obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, as set

18  forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963)."  *Lackawanna*, 532 U.S. at 404.  The Court

19  recognizes an exception for cases of *Gideon* error because the failure to appoint counsel for an

20  indigent defendant is a unique constitutional error rising to the level of a jurisdictional defect that

21  warrants special treatment. *Id.*  However, petitioners raising such challenges must also be

22  otherwise qualified.  In other words, the petitioner must still satisfy procedural prerequisites for

23  relief such as exhaustion of remedies.  *Lackawanna*, 532 U.S. at 404-05.

24

1   Under *Lackawanna*, petitioner can only challenge the 1986 convictions on the basis of

2   the denial of counsel.  He does not and cannot make this claim as the judgment and sentence in

3   his 1986 proceeding show representation by attorney Michael R. Johnson. Dkt. 35, Exhibit 18 at

4   App. C. Therefore, the undersigned concludes that, under the facts in this case, United States

5   Supreme Court precedent precludes petitioner from challenging his fully expired 1986

6   conviction used to enhance his 2004 conviction.

7                              CERTIFICATE OF APPEALABILITY

8       Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

9   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

10  (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

11  has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

12  2253(c)(2).  Petitioner could satisfy this standard "by demonstrating that jurists of reason could

13  disagree with the district court's resolution of his constitutional claims or that jurists could

14  conclude the issues presented are adequate to deserve encouragement to proceed further."

15  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

16  (2000)).  Pursuant to this standard, this Court concludes that petitioner in this case is not entitled

17  to a certificate of appealability with respect to this petition.

18

19                                      CONCLUSION

20      As discussed above, petitioner has failed to show he is entitled to relief on the grounds

21  raised in his petition. Thus, the Court recommends his petition be denied. Pursuant to 28 U.S.C.

22  § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of

23  this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will

24  result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28

1    U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the

2    clerk is directed to set the matter for consideration on October 23, 2015, as noted in the caption.

3         Dated this 29th day of September, 2015.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 33